UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE E. WHITEHEAD,

    Plaintiff,                                    Civil Action No. 11-11129

v.                                           HON. THOMAS L. LUDINGTON
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

       Plaintiff Dale E. Whitehead brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [DE #10] be DENIED and that Plaintiff's Motion for Summary Judgment [DE #9] be GRANTED, remanding this case for further proceedings under the fourth sentence of 42 U.S.C § 405(g).

## PROCEDURAL HISTORY

       Plaintiff applied for Disability Insurance Benefits ("DIB") on July 11, 2006, alleging disability as of July 1, 2003 (Tr. 43). He applied for Supplemental Security Income ("SSI")

on February 29, 2008 (Tr. 236).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on March 25, 2009 in Lansing, Michigan (Tr. 241). Administrative Law Judge ("ALJ") Dennis Matulewicz presided (Tr. 241).  Plaintiff, then unrepresented, testified (Tr. 247-259), as did Plaintiff's friend, Sharon Stollar (Tr. 259-265), and Vocational Expert ("VE") Chandra Donnell (Tr. 265-271).  On April 7, 2009, ALJ Matulewicz found that although Plaintiff was unable to return to his past relevant work, he could perform a limited range of exertionally sedentary work (Tr. 14-18).  On January 14, 2011, the Appeals Council denied review (Tr.2-4).  Plaintiff filed for judicial review of the final decision on March 18, 2011.

## **BACKGROUND FACTS**

Plaintiff, born October 1, 1965 was age 43 when the ALJ issued his decision (Tr. 18, 43).  He graduated from high school and worked previously as a fast food cook (Tr. 55, 59). His application for benefits alleges disability as a result of asthma, right leg problems, chronic obstructive pulmonary disease ("COPD"), and heart problems (Tr. 54).

### A.     Plaintiff's Testimony

Plaintiff testified that he had never been issued a driver's license, stating that right leg problems made him reluctant to attempt driving (Tr. 247).  He denied smoking but stated that he used alcohol regularly (Tr. 248).  Plaintiff stated that the basis for his disability was purely physical (Tr. 249).  He indicated that he had not worked since 2003 (Tr. 249).

Plaintiff, divorced since 2001, reported that he stood 5'6" and weighed approximately 110 pounds (Tr. 250).  He estimated that he could lift up to 20 pounds, stand for up to half

an hour, and walk a maximum of a quarter mile (Tr. 250). He stated that he currently rented a house, noting that he performed most of the housework but that the landlord was responsible for the yard work (Tr. 251). Plaintiff reported that he did his own grocery shopping, laundry chores, and cooking (Tr. 251).

Plaintiff testified that he worked as a cook for a fast food chain for a total of 13 years (Tr. 252). He indicated that he was given a medical release after he experienced shaking (Tr. 252). He opined that his shaking, combined with COPD, bronchitis, asthma, and emphysema prevented him from working (Tr. 253). He noted that his current source of income was state disability income and food stamps (Tr. 254).

Plaintiff reported that in addition to leg and respiratory problems, he had experienced a seizure in December, 2007 while visiting friends in Ohio (Tr. 255). Plaintiff stated that he did not know whether his seizure was neurologically based (Tr. 256). He reported drinking approximately 40 ounces of beer every other day, admitting that he had been drinking before experiencing the December, 2007 seizure (Tr. 257). Plaintiff reported that since the December, 2007 incident, he experienced "seizures" (episodes in which he lay on his bed and shook) "every now and then" (Tr. 258). He denied receiving treatment for the condition (Tr. 263). Plaintiff denied that the seizures occurred after being in the cold or drinking (Tr. 264). He reported that prior to his most recent job at a fast food restaurant, he was a kitchen manager at a Big Boy restaurant (Tr. 265).

### B. Testimony of Plaintiff's Friend

Sharon Stollar alleged that she had witnessed Plaintiff experiencing grand mal

seizures on several occasions (Tr. 259). She noted that during such episodes, Plaintiff would fall to the ground and shake convulsively (Tr. 261).

### C. Medical Evidence

#### 1. Treating Sources

Undated treating notes state that Plaintiff experienced abdominal pain of "unclear cause," alcohol abuse, and asthma (Tr. 229). June, 2003 examination notes state that Plaintiff experienced asthma, COPD, and alcohol abuse (Tr. 211, 219). He was advised to stop alcohol use and chewing tobacco (Tr. 215). In August, 2003, imaging studies of the chest show COPD (Tr. 201). Undated emergency room records state that Plaintiff experienced seizures after abusing alcohol (Tr. 177, 185-186). In April, 2004, Plaintiff was treated for poison ivy, stating that he contracted a rash after performing yard work (Tr. 170-171). In October, 2004, Plaintiff sought treatment for "shakey seizures" (Tr. 157). He admitted to drinking daily (Tr. 158). He was diagnosed with alcohol induced blackouts and "acute ethanol intoxication" (Tr. 159, 165). In October, 2005, Plaintiff sought emergency treatment for breathing problems (Tr. 107). In April, 2006, Plaintiff again sought emergency treatment for asthma (Tr. 101). Plaintiff was hyperventilating and anxious (Tr. 103). Imaging studies showed "nothing acute" (Tr. 102, 111, 136). He was diagnosed with pleurisy (Tr. 137). In May, 2006, Plaintiff again sought emergency treatment for asthma, stating that his medications were ineffective (Tr. 95). A CT of the chest was unremarkable (Tr. 112-113). An x-ray of the lungs showed possible "fibrosis or slight interstitial pneumonia" (Tr. 114). Plaintiff admitted to drinking earlier in the evening (Tr. 95). He was released in stable

condition (Tr. 98). The same month, Plaintiff injured his right fourth finger while cutting down trees (Tr. 126). He underwent a surgical repair and was prescribed Keflex (Tr. 126-128). In December, 2007, Plaintiff sought emergency treatment for "seizure/emphysema with wheezing" (Tr. 79).

## 2. Non-treating Sources

In October, 2004, a non-examining Residual Functional Capacity Assessment by Vimala Sethy M.D. found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 144). Plaintiff was restricted to occasional stooping, kneeling, crouching, crawling, and stair and ramp climbing; frequent balancing; and precluded from all climbing of ladders, ropes, and scaffolds (Tr. 145). Plaintiff was deemed unable to tolerate concentrated exposure to airborne contaminants (Tr. 147). Dr. Sethy found Plaintiff only partially credible (Tr. 148). July, 2006, case development notes state that Plaintiff indicated that he no longer drank alcohol (Tr. 81). Plaintiff coughed during the telephone interview but did not experience problems speaking (Tr. 81).

In October, 2005, Paul Ratcliff, D.O. performed a consultive examination of Plaintiff on behalf of the SSA (Tr. 152-154). Plaintiff reported that he did not take medication for asthma (Tr. 152). Plaintiff denied problems walking or climbing stairs, but stated that he was unable to sit, stand or walk for more than 30 minutes without experiencing pain (Tr. 152). He did not use a cane, but walked with a mild right limp (Tr. 153). Dr. Ratcliff noted "severe wheezing in all lung fields" (Tr. 153). In September, 2006, a second Residual

Functional Capacity Assessment by Dr. Sethy found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 85). Plaintiff was limited to occasional crouching, crawling, and climbing; and frequent balancing, stooping, and kneeling (Tr. 86). The Assessment found the absence of manipulative, visual, or communicative limitations but found that Plaintiff should avoid concentrated exposure to airborne contaminants (Tr. 88). Dr. Sethy, making reference to a treating source statement, found Plaintiff's allegations of limitation "partially credible," noting that he was able to shop, cook, do laundry, and perform outdoor work (Tr. 86, 89).

### D.  The Vocational Expert

VE Chandra Donnell classified Plaintiff's former work as a fast-food cook and kitchen manager as skilled at the medium level of exertion[1] (Tr. 267). The ALJ then posed the following hypothetical question to the VE, taking into account Plaintiff's age, education and work experience:

> [A]ssume an individual who can lift 10 pounds maximum, 5 pounds frequently, 10 pounds occasionally; could stand and/or walk two hours of an eight-hour work shift; who would require a sit/stand at will option; who should never use a ladder, scaffolds, or ropes; only occasionally use ramps or stairs,

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

> stoop, crouch; no crawl, balance; who should avoid walking on uneven surfaces; avoid concentrated exposure to extreme heat, extreme cold, wetness, and humidity; avoid concentrated exposure to fumes, odors, dusts, gases, or poor ventilation; never work with hazards, including dangerous, unprotected machinery, or work at unprotected heights; and only occasionally bend, twist, turn at the waist or neck. Could such a person perform the claimant's past work?

(Tr. 267). The VE found that based on such limitations, the individual would be unable to perform Plaintiff's past relevant work, but could perform the sedentary, unskilled work of a surveillance monitor (11,000 positions in the State of Michigan) and order clerk (9,000) (Tr. 268). She stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") except for the accommodations required by a sit/stand option which were based on her professional experience in job placement (Tr. 269). The VE found that if Plaintiff's testimony were found to be fully credible, his former jobs would be precluded on the basis of his alleged pain and limitations in sitting and standing, but that these claims would not affect the ability to perform the jobs of surveillance monitor or order clerk (Tr. 269-270). The VE concluded her testimony by stating that the additional limitations of no crouching, kneeling, balancing, or stooping would not alter the job findings (Tr. 270-271).

### E. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Matulewicz found that Plaintiff experienced the severe impairments of congenital deformity, right leg; chronic obstructive pulmonary disease [COPD]; and asthma/emphysema but that none of the conditions met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 12-

14). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for sedentary work with the following limitations:

> [H]e requires a sit/stand at will option; he cannot walk on uneven surfaces or use ladders, ropes or scaffolds; he can only occasionally balance, crawl, kneel, crouch, crawl,[2] stoop, ramp or stair climb; he can only occasionally bend, twist or turn at the waist or neck; he cannot work in an area with concentrated exposure to fumes, odors, dust, gases or poor ventilation; he cannot work around hazards including dangerous/unprotected machinery or around unprotected heights

(Tr. 14-15). Citing the VE's job numbers (see above) the ALJ found that although Plaintiff was unable to perform his former work, he could work as a security monitor and order clerk (Tr. 17).

The ALJ discounted Plaintiff's allegations of disability by noting "fairly lengthy intervals during which he participated in no regular healthcare of any sort" (Tr. 16). She acknowledged Plaintiff's respiratory conditions but noted that he had not been compliant with medication (Tr. 16). The ALJ noted that although Plaintiff's friend allegedly witnessed grand mal seizures, Plaintiff had not been diagnosed with an epileptic disorder and did not take anti-convulsive medication (Tr. 16). She cited hospital records stating that Plaintiff's "convulsions" were "alcohol induced" (Tr. 16). She also observed that Plaintiff's leg condition did not prevent him from performing housework, self-care tasks, and cutting wood (Tr. 16).

## STANDARD OF REVIEW

---

[2]The inclusion of "crawl" twice is as stated in the administrative decision (Tr. 267).

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. A Full and Fair Hearing

Plaintiff argues first that the ALJ erred by making his determination without considering the records of his treating physician, Dr. Decker. *Plaintiff's Brief* at 8-10. Noting his *pro se* status at the time of the hearing, Plaintiff contends that the ALJ failed to meet his "heightened duty" to fully develop the record. *Id.* at 8 (citing *Lashley v. Secretary of Health and Human Services* 708 F.2d 1048, 1051 (6th Cir. 1983)).

Plaintiff is correct that although an ALJ cannot properly assume the role of counsel, "[h]e acts as an examiner charged with developing the facts." *Lashley,* 708 F.2d at 1051; *Richardson v. Perales,* 402 U.S. 389, 411 91 S.Ct. 1420, 1432, 28 L.Ed.2d 842 (1971). Where a claimant is unrepresented at the hearing, "the ALJ has a duty to exercise a *heightened* level of care and assume a more active role" in the proceedings. *Lashley* at 1051 (emphasis

added)(*citing Smith v. Harris,* 644 F.2d 985, 989 (3d Cir.1981)). However, as a general rule, where the existing records provided more than adequate grounds for determination, the ALJ is not required to "ferret out" additional records that the claimant neglected to procure. *Nabours v. Commissioner of Social Sec.,* 50 Fed.Appx. 272, 275, 2002 WL 31473794, *2 (6th Cir. 2002). *See Boyes v. Secretary of Health and Human Services* 46 F.3d 510, 512 (6th Cir. 1994); accord *Halsey v. Richardson,* 441 F.2d 1230 (6th Cir.1971)("Claimant bears the burden of proving his entitlement to benefits");20 C.F.R. § 404.1512(a).

The ALJ's finding that Plaintiff was entitled to a limited range of sedentary work, based mostly on emergency room records and Plaintiff's testimony, amounts to a reasonable interpretation of the present transcript. Further, Plaintiff counsel does not state how Dr. Decker's material would change the ALJ's decision and has not provided the Court with these records. Nonetheless, the failure to consider Dr. Decker's treating material presents grounds for remand.

A case development sheet created by the SSA shows that on August 10, 2006, Plaintiff informed an SSA case manager that Dr. Decker's records had been sent to the SSA the previous day (Tr. 82). Moreover, the Residual Functional Capacity Assessment performed the following month by Dr. Sethy makes reference to a medical source statement, (presumably by Dr. Decker) performed one month before in August, 2006 (Tr. 86). Dr. Sethy's comments suggest that Dr. Decker submitted a medical source statement finding that Plaintiff's leg and respiratory problems rendered him disabled (Tr. 86). Specifically, Dr. Sethy's notes show that Dr. Decker opined that Plaintiff was unable to perform any level of exertional activity (Tr.

86). Dr. Sethy, rejecting the treating opinion, concludes her Assessment by noting that a treating source (presumably Dr. Decker) completed an entire "examining source statement" of Plaintiff's residual capabilities (Tr. 89-90).

However, while Dr. Sethy, performing the Assessment on behalf of the SSA, had access to Dr. Decker's records, those records are not included in the administrative record before this Court. Further, through no fault of Plaintiff, it appears that the ALJ did not have benefit of the treating source material when making his determination. The administrative decision makes no reference to Dr. Decker's treating records or a treating source opinion of Plaintiff's residual abilities (Tr. 16). Given that it appears that Dr. Decker submitted both his treatment records and a "disability" opinion, the ALJ's finding that "no physician imposed a work preclusive limitation on the claimant's functioning . . ." is clearly erroneous[3] (Tr. 16).

Remand is required for two reasons. First, Dr. Sethy's comments indicate that a "disability" opinion by a treating source exists. The failure to discuss the opinion of a treating source and the reasons for accepting or rejecting the treating opinion constitutes error *per se*. *See Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004));20 C.F.R. § 404.1527(d)(2)).

Second, while it is unclear who lost the file, it was not Plaintiff. Dr. Sethy's reference to the medical source statement shows that it was misplaced *after* being placed in the custody of Defendant or Defendant's agent (Tr. 82, 86). Thus Defendant's position that Plaintiff did

---

[3]Dr. Decker's records may also call into question the ALJ's accompanying finding that Plaintiff "participated in no regular healthcare of any sort" (Tr. 16).

not meet his burden of production (flatly contradicted by the present transcript) is not only unavailing, but not substantially justified. The assertion that Plaintiff "failed at every step to obtain the records" is a particularly gross misstatement, given that it was the Commissioner who apparently lost the files after Plaintiff went to a fair amount of effort to ensure that they were placed into the record. *Compare Defendant's Brief* at 12; Case Development Sheet (Tr. 82). Defendant's related contention that Plaintiff is to be faulted for not voicing an objection to the missing records at the hearing is equally meritless. *Defendant's Brief* at 12. Plaintiff, proceeding *pro se,* did not err in assuming that treating material Dr. Decker, provided to the SSA (at Plaintiff's request) would have been made part of the record.

I therefore recommend that the case be remanded for further fact-finding, requiring the ALJ to either locate the above-discussed files or procure new copies from Dr. Decker.

### B. Occasional Stooping

Plaintiff argues that the finding that he was capable of occasional stooping (found in both the hypothetical question to the VE and the RFC) is not supported by substantial evidence. *Plaintiff's Brief* at 11-12. He contends that he is incapable of *all* stooping. *Id.* Citing SSR 96-9p, he notes that the preclusion on stooping "'would significantly erode the unskilled sedentary occupational base,'""'usually'" resulting in a finding of disability. *Id.* at 11-13.

The transcript contains substantial support for the conclusion that Plaintiff was capable of occasional stooping, including his own admission that he was capable of performing household chores and exertionally demanding outdoor tasks (Tr. 126). However, assuming

that I accept Plaintiff's claim that he is incapable of even occasional stooping, this argument fails. Aside from Plaintiff's citation to SSR 96-9p for the proposition that no stooping "usually" results in a disability finding, he does not explain how his inability to stoop would prevent him performing the jobs of surveillance monitor or order clerk. After the VE's job findings were elicited at the hearing, Plaintiff objected to the hypothetical limitation of occasional crouching, stated that he was unable to perform any crouching (Tr. 267, 270). In response to that objection, ALJ then asked the VE if a preclusion on all "crouching, kneeling, . . . balancing" or "stooping" would change her job findings of surveillance monitor and order clerk (Tr. 270-271) . The VE answered that the additional limitations would not alter her job findings (Tr. 271). Thus, even if the hypothetical question were modified to preclude all stooping, Plaintiff could still perform the jobs of surveillance monitor and order clerk.

Moreover, while Plaintiff stated that he was unable to crouch, he did not object to the hypothetical limitation of occasional stooping. The fact that Plaintiff was proceeding *pro se* did not invest the ALJ with telepathic powers allowing him to infer Plaintiff's unvoiced objection. Thus, Plaintiff's failure to raise the "stooping" objection, coupled with the VE's statement that "no stooping" would not change the job findings *and* Plaintiff's own inability to show how a preclusion on stooping would prevent him from performing these jobs defeats this argument.[4]

---

[4]

Of course, the fact that the I find no error in the current RFC does not prevent the ALJ from crafting a different hypothetical question or RFC after reviewing Dr. Decker's records.

In closing, because present transcript does not establish an "overwhelming" case for disability, the errors discussed in Section **A.**, while critical, do not automatically entitle the Plaintiff to an award of benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994). Accordingly, the case should be remanded to the administrative level for further proceedings consistent with this opinion.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [DE #10] be DENIED and that Plaintiff's Motion for Summary Judgment [DE #9] be GRANTED, remanding this case for further proceedings under the fourth sentence of 42 U.S.C § 405(g).

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing

party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: February 9, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 9, 2012.

s/Johnetta M. Curry-Williams<br>
Case Manager